# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**TERESITAS M. MASCARENAS**,

      Plaintiff,

      vs.                             No. **04cv852 MCA/LFG**

**RALEY'S OF NEW MEXICO, INC.,**

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendant's Motion for Summary Judgment* [Doc. 24], filed February 22, 2005, and Plaintiff's *Motion to Strike* [Doc. 34], filed April 22, 2005.  Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants *Defendant's Motion for Summary Judgment* and denies Plaintiff's *Motion to Strike*.

## I. BACKGROUND

On July 6, 2004, Plaintiff Teresita M. Mascarenas filed her *Complaint for Wrongful Termination and Other Claims* against her former employer, Raley's of New Mexico, Inc., alleging, *inter alia*, employment discrimination in violation of the Americans with Disabilities Act of 1990, 41 U.S.C. § 12101 *et seq.*  ("the ADA"). [Doc. A, Exh. A2].[1]

---

[1]  Mascarenas had originally also asserted claims for wrongful termination in violation of N.M.S.A. § 52-1-28.2 (Count I) and failure to pay back pay (Count III).  [See generally Doc. 1, Exh. A2].  On March 4, 2005, this Court entered a *Stipulated Order of Dismissal as to Plaintiff's Count III*. [Doc. 27].  Mascarenas later abandoned Count I.  [See Doc. 31 at 1 ("Plaintiff has also

Mascarenas had been employed as a produce clerk by Raley's (and, before that, by Raley's predecessor in interest) for 23 years and described herself as "a 'great employee' as defined by Raley's employee handbook." [Id. at 1]. In early 2003, Mascarenas was diagnosed with "overuse of joints causing pain which is secondary to the lifting and carrying she performed on the job" and her health care providers limited her in her daily lifting and standing. [Id. at 3]. In a note dated March 26, 2003, Sandra Hamilton, CFNP, restricted Mascarenas to lifting no more than seven pounds. On October 3, 2003, Herbert V. Rachelson, MD modified the restriction to frequent lifting of 10 pounds and occasional lifting of 20 pounds. Dr. Rachelson also limited Mascarenas's standing to no more than 6 hours per day. [Id. at 2, 3; see also Doc. 25, Exh. K]. Mascarenas alleges that this medical condition renders her a qualified individual with a disability for purposes of the ADA. [Doc. 1, Exh. A2 at 3].

Pursuant to Raley's "Return to Work" program, employees who are under a medical restriction as a result of an on-the-job injury may be assigned light-duty tasks on a temporary basis until they are sufficiently healthy to return to their original position. [Doc. 25, Exh. J]. According to Mascarenas, from March 24, 2003 until July 11, 2003, Raley's accommodated her medical restriction by assigning her various light-duty jobs. [Doc. 1, Exh. A2 at 3]. On July 11, 2003, however, Raley's terminated Mascarenas. Mascarenas then filed suit in the First Judicial District Court, County of Santa Fe, State of New Mexico. Raley's timely removed the matter to this Court. [Doc.1].

_____

brought the claim that she was terminated as a result of filing a Workers Compensation claim but Plaintiff will concede this issue and agree to this dismissal.")].

Raley's now moves for summary judgment.  Raley's maintains that Mascarenas cannot establish a prima facie case of employment discrimination and that the undisputed facts reveal that Raley's had legitimate, nondiscriminatory reasons for terminating Mascarenas, who is unable to demonstrate that those reasons are pretextual.  [Doc. 24]. According to Raley's, Mascarenas cannot establish that she is disabled because she can neither articulate a specific disability nor that the alleged disability substantially limits a major life activity.  [Doc. 25 at 10-11].  Raley's also asserts that Mascarenas cannot demonstrate that she was qualified for the position of produce clerk or that her requested accommodations (reassignment to permanent light-duty work or to various other in-store positions) were reasonable.  [Id. at 15-17].  Finally, Raley's contends that it has produced the following legitimate, nondiscriminatory reasons for terminating Mascarenas: (1) medical restrictions prevented Mascarenas from performing as a produce clerk, (2) Raley's had no open positions consistent with Mascarenas's limitations at the relevant times, and (3) Raley's does not place employees in permanent light-duty positions.  [Id. at 18-19].

Mascarenas responds that material factual issues exist as to whether (1) she is disabled, (2) her disability affects a major life activity, and (3) Raley's could have but failed to provide reasonable accommodations.  [Doc. 31 at 1].  Specifically, Mascarenas asserts that the lifting and standing restrictions placed on her by her physician render her disabled for purposes of the ADA.  [Id. at 2-3].  Mascarenas also contends that Raley's could have reasonably accommodated her by either permanently reassigning her to a light-duty position or by placing her in any number of vacant positions for which she was qualified.  [Id. at 5-

3

11].  Raley's replies that Mascarenas has not demonstrated that she is disabled for purposes of the ADA because she has not shown that her impairment substantially limits a major life activity and that she has not demonstrated that she is qualified to perform the positions she seeks, either with or without reasonable accommodations.  [Doc. 32].

## II. ANALYSIS

### A. *Defendant's Motion for Summary Judgment*

#### i. Fed.R.Civ.P. 56

Summary judgment under Fed.R.Civ.P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ."  Fed.R.Civ.P. 56(e).  Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial."  Id.  Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial).  See Celotex, 477 U.S. at 324.

It is not the Court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment.  Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

### ii. The ADA

The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."   42 U.S.C. § 12112 (a).  To establish a viable claim under the ADA, the plaintiff must prove by a preponderance of the evidence that (1) she has a disability; (2) she is qualified for the position; and (3) her employer discriminated against her because of her disability. Poindexter v. Atchison, Topeka and Santa Fe Ry. Co., 168 F.3d 1228, 1230 (10th Cir. 1999). The burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) applies to ADA claims. See Hardy v. S.F. Phosphates Ltd. Co., 185 F.3d 1076, 1079 (10th Cir.1999). Under that analysis, the plaintiff bears the burden of raising a genuine issue of material fact on each element of her prima facie case. If the plaintiff succeeds, the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for its employment decision.  Id.  If the defendant articulates a nondiscriminatory reason, the

burden shifts back to the plaintiff to show a genuine issue of material fact as to whether the proffered reason for the discharge is pretextual.  Id. at 1079-80.

The ADA defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual; . . . a record of such an impairment; or . . . being regarded as having such an impairment."  42 U.S.C. § 12102(2). An individual is "substantially limited" when he or she is "unable to perform a major life activity that the average person in the general population can perform; or . . . [s]ignificantly restricted as to the condition, manner, or duration under which [he or she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  29 C.F.R. § 1630.2(j).  Factors to be considered in determining substantial limitation include the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment.  29 C.F.R § 1630.2(j)(2)(i)-(iii).

Whether an individual is disabled for purposes of the ADA is an individualized inquiry, the determination of which "is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual."  Sutton v. United Air Lines, Inc., 527 U.S. 471, 483 (1999).  Indeed, when inquiring as to whether an impairment substantially limits one or more of the individual's major life activities, the Court "must examine the extent of the limitation caused by her

impairment in terms of her own experience." <u>Albert v. Smith's Food & Drug Ctrs., Inc.</u>, 356 F.3d 1242, 1250 (10th Cir. 2004). Unless the substantially limited major life activity is that of working, "the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with her specific job." <u>Toyota Motor Mfg., Kentucky, Inc. v. Williams</u>, 534 U.S. 184, 200-201 (2002). Because "tasks unique to any particular job are not necessarily important parts of most people's lives . . . occupation-specific tasks may have only limited relevance to the . . . inquiry." <u>Id.</u> at 201. For that reason, a plaintiff's inability to perform tasks associated with her particular position is not sufficient proof that she is substantially limited in that area in general. <u>See</u> <u>id.</u>

The Tenth Circuit has held that "the definition of a 'major life activity' includes lifting." <u>Lusk v. Ryder Integrated Logistics</u>, 238 F.3d 1237, 1240 (10th Cir. 2001) (<i>citing</i> <u>Lowe v. Angelo's Italian Foods, Inc.</u>, 87 F.3d 1170, 1172 (10th Cir. 1996). Unless a lifting impairment appears substantially limiting on its face, evidence that the impairment "merely affects a major life activity is generally insufficient; rather, a plaintiff must produce comparative evidence from which a reasonable inference can be drawn that such activity is substantially limited." <u>Id.</u> at 1241. In <u>Lusk</u>, the Court held that a 40-pound lifting restriction did not appear substantially limiting on its face, and noted that a number of other circuits have concluded similarly. <u>Id.</u> (<i>citing</i> <u>Gutridge v. Clure</u>, 153 F.3d 898, 900 (8th Cir.1998) (45-pound restriction not a substantial limitation on the ability to lift); <u>Thompson v. Holy</u>

Family Hosp., 121 F.3d 537, 540 (9th Cir.1997) (same as to 25-pound lifting restriction); Williams v. Channel Master Satellite Sys., Inc., 101 F.3d 346, 349 (4th Cir.1996) (same as to 25-pound lifting restriction). By contrast, the Tenth Circuit has held that a 15-pound lifting restriction resulting from multiple sclerosis appears substantially limiting on its face and, therefore, comparative evidence was not required to withstand a motion for summary judgment. Lusk, 238 F.3d at 1240 (*citing* Lowe, 87 F.3d at 1174).

Although Mascarenas's lifting restriction ultimately was increased to 10 pounds on a frequent basis and 20 pounds on an occasional basis, at the time she was terminated, Mascarenas was limited to lifting no more than 7 pounds. [See Doc. 25, Exhs. K, M]. At least one other district court within the Tenth Circuit has concluded that the inability to lift more than five to eight pounds is substantially limiting on its face. E.E.O.C. v. Valu Merchandisers Co., 2002 WL 1932533 (D.Kan. 2002). In addition to medical documentation attesting to her limitation, the plaintiff in Valu Merchandisers Co. testified that she was restricted in such daily chores as cooking meals and washing and styling her hair. Id. The competent summary-judgment evidence in the instant case reveals that Mascarenas is similarly limited in her ability to use a manual can opener and to hold up a blow drier without having to switch hands. [Doc. 31, Exh.1, Jan. 13, 2005 depo. testimony of Mascarenas, at 262]. Accordingly, a reasonable juror could find that Mascarenas is disabled for purposes of the ADA. Even so, however, the Court concludes that Mascarenas has not established that, at the relevant times, she was qualified for the position she held or desired.

As explained above, to prevail in this action, Mascarenas must prove, among other things, that she is a "qualified individual with a disability," meaning that she is able, with or without reasonable accommodation, to perform the essential functions of the employment position that she either holds or desires.  See 42 U.S.C. § 12111(8).  In determining whether a particular function is essential, consideration must be given to the employer's judgment regarding the functions of a job that are essential, including those functions contained in a written job description.  Bartee v. Michelin N. Am., Inc., 374 F.3d 906, 915 (10th Cir. 2004).  An employer, however, "may not turn every condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description."  Id. (quoting Davidson v. America Online, Inc., 337 F.3d 1179, 1190, 1191 (10th Cir.2003)).

With respect to an employer's obligation to provide reasonable accommodations, the Tenth Circuit has held that the employer need not create a new job or modify an essential function of a vacant job in order to make it suitable for a disabled employee.  Nor is an employer required to "bump" one employee in order to create a position for the disabled employee.  Smith v. Midland Brake, Inc., 180 F.3d 1154, 1168-70 (10th Cir. 1999) (en banc).  On the other hand, "a reasonable accommodation may include reassignment to a vacant position if the employee is qualified for the job and it does not impose an undue burden on the employer."  Taylor v. Pepsi-Cola Co., 196 F.3d 1106, 1110 (10th Cir. 1999).  An employee alleging an employer's failure to accommodate must establish, among other

things, that she requested accommodation by reassignment to a vacant position and that she was qualified to perform the vacant job.  The vacant position may be identified by the employee or she may request that the employer identify it through an interactive process. Id.  "To survive summary judgment, [the p]laintiff must establish that [s]he was qualified to perform an appropriate vacant job which [s]he must specifically identify and show was available within the company at or about the time [s]he requested reassignment."  Id.  For purposes of the ADA, "vacant" means not only positions that are currently vacant but also those positions that the employer reasonably expects will become vacant in the fairly immediate future.  Smith, 180 F.3d at 1175.

In this case, Mascarenas does not dispute that medical restrictions prevented her from returning to her original position as a produce clerk.  [See Doc. 31 at 6].  Mascarenas contends, however, that Raley's could and should have accommodated her either by permanently reassigning her to a light-duty position or placing her in various vacant positions for which she claims to have been qualified.  [Id. at 5-11].  In support of her argument that Raley's could have permanently placed her in a light-duty position, Mascarenas cites Howell v. Michelin Tire Corp., 860 F.Supp. 1488 (M.D. Ala. 1994). [See Doc. 31 at 8].  While Howell states that a reasonable accommodation may include reassigning a disabled employee to a vacant light-duty position, Howell also explains that

> [i]f the position was created as a temporary job, the reassignment to that position need only be for the temporary period of the job. Therefore, if a light-duty job is a temporary job, reassignment to that job need only be for the temporary

period of the job, *and an employer need not convert a temporary job into a permanent one.*

Howell, 860 F.Supp. at 1492 (emphasis added).  In the instant case it is undisputed that Raley's offers light-duty jobs on a temporary basis only, and that light-duty tasks are not performed as part of a pre-established position.  [See Doc. 25 at 4-5, ¶ 15 ("Light duty is not available on a permanent basis."); Doc. 31 at 12, ¶ 7 ("Plaintiff does not dispute fact no. 15."); Doc. 31, Exh. 1, Jan. 13, 2005 depo. testimony of Mascarenas, at 197].  The facts of Howell also are distinguishable from the facts present here inasmuch as the plaintiff in Howell pointed to two specific examples of the defendant's apparent actual practice of accommodating disabled employees in light-duty positions for extended periods of time. See Howell, 860 F.Supp. at 1492-93 (noting that one employee had been assigned light-duty tasks for a period of 11 months and another for 2 years).  By contrast, Mascarenas has offered no evidence that Raley's actual practice has been to disregard its written policy describing light-duty work as temporary.  Accordingly, the Court concludes that Mascarenas has not satisfied her burden of demonstrating that reassignment to a permanent light-duty position would have been a reasonable accommodation.

Mascarenas also bears the burden of establishing that she asked to be transferred to a vacant position that she was qualified to perform.  See Taylor, 196 F.3d at 1110. However, at her deposition, Mascarenas was specifically asked whether, since March 2003, she had requested transfer to another position.  She responded: "No. They just -- I just figured they would say, 'This is open, and this is open, and this is open. Does any of this

interest you? This is what we have.'  That's what I thought would happen, and -- no, but nothing was said." [Doc. 25, Exh. B at 228].  Mascarenas also testified that at the time her health care provider restricted her to lifting nothing over seven pounds, there were no jobs available that were consistent with her limitation.  [Id. at 215; see also id., Exh. C, attachments 1-5 (written job descriptions detailing lifting requirements for various clerk positions)].   When asked what positions, vacant or not, she felt she could perform, Mascarenas identified the position of checker.  When asked if she had either applied for a checker position or asked to be informed of an open checker position since July 2003, Mascarenas responded, "No." [Id. at 224-225].  Mascarenas also identified scan coordinator and floral clerk as the other positions she believed she was qualified to perform, but then stated that those positions had both been filled for a number of years. [Doc. 31, Exh. 1 at 226-227].  While Store Director Matthew Warden confirmed that the position of old fashioned deli clerk was available for a period between March and December 2003, the written job description for this position states under "Lifting/Lowering" that moving objects up to 75 pounds may be required.  [Doc. 25, Exh. C, att. 3].  At no relevant time was Mascarenas cleared to lift as much as 75 pounds.  [See Doc. 25, Exh. K (7-pound restriction) and Exh. M (10 to 20-pound restriction)].

Because Mascarenas has failed to satisfy her burden of proof as to the existence of vacant positions for which she was qualified, she has failed to establish that Raley's could have reasonably accommodated her.  See Taylor, 196 F.3d at 1110.  As a result, Mascarenas is unable to establish a prima facie case of employment discrimination under the ADA and

12

Raley's summary-judgment motion will be granted.

**B. Mascarenas's *Motion to Strike***

Mascarenas has filed a motion to strike language from Raley's *Reply in Support of Defendant's Motion for Summary Judgment* [Doc. 32] that the position of old fashioned deli clerk requires continuous lifting of 11-15 pounds and frequent lifting of 15-75 pounds as inaccurate and unsupported by the evidence. [Doc. 34]. Raley's responds that this language is appropriate in light of the written job description for old fashioned deli clerk, which provides under the section "Lifting/Lowering" that the deli clerk may be required to move items weighing as much as 75 pounds. [Doc. 35 at 3]. In reply, Mascarenas emphasizes that "moving," which is more akin to pushing, is different from "lifting," and urges the Court to apply the ordinary meaning of these terms as they are commonly used. [See Doc. 36 at 2].

The job description for old fashioned deli clerk states, in pertinent part:

> LIFTING/LOWERING: Performed frequently to continuously throughout the day with a wide variety of items:
>
> 5. Move over-flows from the meat cutting and produce areas in order to access Meat Deli items. This may require moving boxes of chicken . . . weighing 65 lbs. or pork roasts in boxes . . . weighing up to 75 lbs.

[Doc. 25, Exh. C, att. 3]. The requirement that the old fashioned deli clerk maneuver items weighing up to 75 pounds, by whatever means, is clearly included under the heading "Lifting/Lowering." It is not placed under the heading "Pushing/Pulling," which is also included in the job description. [See id.]. Because the job description for old fashioned deli

13

clerk plainly states that lifting items weighing as much as 75 pounds is a requirement of the position, Mascarenas's motion to strike is not well taken and will be denied.

## III. CONCLUSION

In any action for employment discrimination brought pursuant to the ADA, the plaintiff carries the burden of establishing a prima facie case by proving by a preponderance of the evidence that (1) she has a disability; (2) she is qualified for the position; and (3) her employer discriminated against her because of her disability.  Poindexter, 168 F.3d at 1230. As explained above, while the Court concludes that a reasonable juror could find in this case that Mascarenas is disabled for purposes of the ADA, the Court also concludes that Mascarenas has failed to satisfy her burden of proof with respect to the qualified-for-the-position analysis.  Accordingly, summary judgment will be entered for Raley's.  Because the Court has determined that Mascarenas's *Motion to Strike* is not well taken, that motion will be denied.

**IT IS, THEREFORE, ORDERED** that *Defendant's Motion for Summary Judgment* [Doc. 24] is GRANTED;

**IT IS FURTHER ORDERED** that Mascarenas's *Motion to Strike* [Doc. 34] is DENIED.

**SO ORDERED** this 31st day of May, 2005, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge

15